UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTHONY HOLLAND, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:10cv1156 (MRK) |
| | : | |
| STATE OF CONNECTICUT, | : | |
| | : | |
| Defendant. | : | |

### MEMORANDUM OF DECISION

Plaintiff Anthony Holland claims that his employer, the Connecticut Department of Transportation, discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a–60 *et seq.* However, because there is no evidence to suggest that Mr. Holland was ever subjected to an adverse employment action, Defendant's Motion for Summary Judgment [doc. # 50] is GRANTED.

### I.

"[P]roperly employed, summary judgment is a useful device for unmasking frivolous claims and putting a swift end to meritless litigation." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of*

1

*Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

If the moving party—here, the State of Connecticut—shows that no facts are contested, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Brown*, 654 F.3d at 358 (quotation marks omitted).

When considering a motion for summary judgment, the Court must resolve "all permissible inferences and credibility questions in favor of the party against whom judgment is sought." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 546 (2d Cir. 2010).

## II.

Mr. Holland, who is black, has worked at the Department of Transportation ("DOT") since 1993. When he transferred to the DOT's Norwich District 2 office in 2006, he began reporting to Kelli McKeon, who is white. Mr. Holland and Ms. McKeon did not get along, and after five months, Mr. Holland requested that someone other than Ms. McKeon supervise his work. His request was granted. Since August 2006, Ms. McKeon has not been Mr. Holland's official supervisor and has had no role in decisions regarding his salary and raises. She has,

however, continued to speak to Mr. Holland and others, often negatively, about his performance at work, and she has at times exerted control over his daily work assignments.

In September 2009, Ms. McKeon reported that her car tires had been slashed while parked away from the office outside of work hours. She reported the incident to the Norwich Police Department and told DOT that she believed Mr. Holland was responsible, given their problems at work as well as a friend's statement that, at the time he discovered the slashed tires, he saw two black men laughing in a nearby car. DOT told Ms. McKeon that it would notify DOT security and monitor its employee parking area. Ms. McKeon responded that she was concerned about what might happen to her at work, to her children, and to her property.

DOT supervisors held a factfinding meeting with Mr. Holland on September 23, 2009 and, according to Mr. Holland, told him that they were going to let the Norwich Police Department handle the investigation, but that Mr. Holland could be terminated depending on the investigation's outcome. In the end, after the investigation concluded, Mr. Holland was not implicated in the crime, no discipline resulted, and Mr. Holland and Ms. McKeon were advised not to interact. Mr. Holland took a week off of work in October 2009 due to stress and anxiety.

Mr. Holland claims that his opportunities for advancement at DOT have been hindered because a promotion would require him to work directly with Ms. McKeon. He has not, however, been denied any jobs for which he has applied, nor has he been disciplined or lost pay or raises due to any of Ms. McKeon's accusations or criticisms.

Mr. Holland filed a complaint with the Connecticut Commission on Human Rights in November 2009 and in the Connecticut Superior Court in June 2010. The State of Connecticut removed the case to this Court in July 2010 and has now moved for summary judgment on all counts of Mr. Holland's Complaint.

In response to Defendant's summary judgment motion, Mr. Holland has now acknowledged that his claims of negligent and intentional infliction of emotional distress—Counts Two and Three of his Complaint—should be dismissed. Mr. Holland has also agreed that events prior to January 24, 2009 (for Title VII), or May 24, 2009 (for CFEPA), are time-barred and cannot be considered here. The Court can thus turn directly to the question of whether Mr. Holland may have been the victim of racial discrimination during or after the events just described.

### III.

Mr. Holland's claims under Title VII and CFEPA are both analyzed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See Kaytor*, 118 F.3d at 556 (noting that both Title VII and CFEPA discrimination claims are analyzed similarly). A plaintiff must first establish a *prima facie* case; the employer may then come forward with a legitimate, non-discriminatory reason for the adverse action; the plaintiff then has an opportunity to produce evidence and carry the burden of persuasion that the proffered reason is a pretext and that the real reason for the adverse action was the plaintiff's membership in a protected class. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).

Under the *McDonnell Douglas* framework, a plaintiff can establish a *prima facie* case of discrimination by showing: "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Sassaman v. Gamache*, 566 F.3d 307, 312 (2d Cir. 2009) (quotation marks omitted).

Mr. Holland's claim runs aground on the third of these steps. The Second Circuit has described an adverse employment action as "a materially significant disadvantage with respect to the terms of [a plaintiff's] employment." *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 128 (2d Cir. 2004). While courts must assess each situation in light of the totality of the circumstances, there must be "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

The adverse employment actions that Mr. Holland highlights include Ms. McKeon's accusations that he had slashed her tires; the ensuing investigation, both by the police and DOT; the fact that DOT security kept an eye on Mr. Holland; the meeting in which Mr. Holland was told that he could be terminated, depending on the outcome of the investigation; and the hindrance to Mr. Holland's advancement opportunities caused by his inability to work with Ms. McKeon.

None of these, alone or in combination, constitutes an adverse employment action. The Second Circuit has said that "an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner." *Joseph v. Leavitt*, 465 F3d 87, 91 (2d Cir. 2006). In *Joseph*, the plaintiff had been put on administrative leave during the pendency of a criminal investigation. The Second Circuit held that this in itself did not rise to the level of an adverse employment action for the purpose of Title VII. *See id.* It follows that merely being called into a meeting and told of an investigation and its possible consequences cannot constitute an

5

adverse employment action either, especially when no discipline or other negative consequences ever followed.

As for opportunities for advancement at DOT, Mr. Holland himself testified that no positions have opened for which he is eligible. At his deposition, Mr. Holland speculated that this was because of the present litigation. But he also admitted that this was only speculation, and his counsel informed the Court at oral argument that a position has now opened for which Mr. Holland has applied. Even putting aside this news, nothing in the record suggests that Mr. Holland has been hindered from advancement at DOT in any way, either because of his race or Ms. McKeon's animus. Mr. Holland's salary and raises, his continued ability to work at DOT, and his eligibility for promotion have all remained unaffected by any conflict Ms. McKeon may have inspired.

### IV.

Because Mr. Holland has failed to offer evidence that could lead a reasonable juror to find an adverse employment action in this case, the Court GRANTS the State of Connecticut's Motion for Summary Judgment [doc. # 50]. **The Clerk is directed to enter judgment in favor of the Defendant and close this file.**

                                        **IT IS SO ORDERED.**

                                    /s/  Mark R. Kravitz
                                    United States District Judge

**Dated at New Haven, Connecticut: June 26, 2012.**